Well, good morning, everyone. Good morning. Before we hear our first argument this morning, Judge Rawlinson and I would like to thank and acknowledge Judge Michael Murphy, who's visiting with us from the Tenth Circuit, and we're very appreciative and grateful that he's able to take some time and join us in San Francisco. Thank you. Okay. The first – we have two habeas-related cases, Berry and Palovich, that raise the same issue. And I'm wondering if we could hear both of those at the same time. Is there – Or whatever, we'll see if we can – we don't want to hear – I think they raise pretty much the same issue. Yes, Your Honor, I would like to have the opportunity to use my microphone. Okay. Why don't you just get up there, though? May it please the Court, my name is Heather Fraley, and I represent the petitioner, William Berry. I'd like to reserve two minutes for rebuttal. This Court should grant Mr. Berry's petition to file a second or successive petition because he has made a prima facie showing that the United States Supreme Court's recent decisions in Montgomery and Welsh establish a new rule of constitutional law requiring state courts to apply narrowing interpretations of criminal statutes retroactively. This Court has acknowledged that petitioners seeking to file second or successive petitions bear only a light burden to show possible merits sufficient to warrant further exploration in the district court. This is a burden Mr. Berry can certainly satisfy. First, Mr. Berry can show that the Supreme Court's decisions in Montgomery and Welsh establish a new rule of constitutional law. But do they – does that new rule apply to an interpretation of a state statute? Yes, Your Honor. How? We believe that it does. So in Montgomery, the Supreme Court held that the substantive rule exception of Teague applies to the state courts as a matter of constitutional law. But not as a matter of state – not when interpreting state law, though, right? Does it – The Court doesn't make that distinction, Your Honor. The Court simply holds that the substantive rule exception of Teague applies to the state courts as a matter of constitutional law. When you couple that holding with a decision of Welsh, where the Court acknowledges that the substantive rule exception encompasses both narrowing interpretations of statutes as well as constitutional holdings that render certain classes of persons or conduct beyond the power of the State to punish, it is clear that the – that the narrowing interpretation of State statutes must apply under these rules. And that is because – How is that clear? Your Honor, because the State courts don't have occasion to apply narrowing interpretations of Federal statutes. Similarly, the Supreme Court is not in the business of narrowing State statutes. So if the – Maybe that's by design. Perhaps, Your Honor. But, again, we know from Montgomery that the substantive rule exception applies to the States as a matter of constitutional law. And because we know that the substantive rule exception includes narrowing interpretations of criminal statutes, the – the next logical conclusion, then, is that when a State narrows its interpretation of its own statutes, that it must apply the substantive rule exception of Teague. And in this case, that – in this case, Biford, that needs to be a new substantive rule, but not just a new substantive rule, but a new substantive rule of constitutional law. Your Honor, that's what makes Welch so important, because Welch makes clear that the new substantive rule does not have to be a rule of constitutional law. But this just changed the whole world from Teague, right? It – it did change Teague. It announced two new rules that interpret Teague. And so, again, what Welch holds is that the substantive rule exception is a test solely of function. And we know that it is not limited to constitutional rulings because of the Court's examination of the Boosley decision in that case. And so in – in Boosley, the Supreme Court, as a matter of statutory interpretation, narrowed its interpretation of a Federal criminal statute. And the Supreme Court in Welch acknowledged that the Supreme Court's holding in Boosley was an application of the substantive rule exception of Teague. So from that analysis of Boosley, combined with the Court's holding in Welch that the substantive rule exception is purely a test of function, we know that the exception is not limited to constitutional rulings. Roberts. Go ahead. No, go ahead. Don't you think that if the Supreme Court intended what you suggest, and that is the substantive and need not be based in constitutional law, don't you think if they intended to change Teague in that fashion, that they would say so expressly? And, Your Honor, we believe that they do in Welch. And again, when the Court announced its rule in Welch, the argument of amicus in Welch was precisely what Your Honor is suggesting, that the only time substantive rules apply is when they have a substantive constitutional basis. And the Court expressly rejects that argument, Your Honor, and holds that it is only a test of the ---- Read me the language where they reject that. Sure. So the Court says that amicus contends that ---- What page are you on in the opinion? Yes, Your Honor. I am on ---- You're in Welch? Yes, Your Honor. I am in Welch, 136 Supreme Court, and I am at 1265 at the beginning of Section C. And the Court discusses the argument of the amicus, where they urge an understanding that the substantive rule exception only applies when the underlying constitutional right is substantive. And the Court says neither Teague nor its progeny support that approach. This Court has determined whether a new rule is substantive by considering the function of the rule, not its underlying constitutional source. And then again, if we ---- the Court continues to explain what it means by this, and if we jump forward, Your Honors, to page 1267, where the Court discusses it, the Court says, although this Court has put great emphasis on certain kinds of substantive decisions, we know that it is not limited to decisions applying the Constitution. And that is precisely what Boozley was, Your Honor. Boozley was an application of ---- But it talked about cases that place certain conduct, classes of person, or punishment beyond the legislative power of Congress. That was the context that that language was written in. Respectfully, Your Honor, Welch actually rejects that holding or that understanding that it places it beyond the power of Congress. And again, right here on page 1267, the Court says, Boozley thus contradicts the contention that Teague inquiry turns only on whether the decision at issue holds that Congress lacks some substantive power. And again, in what the Court did in Bailey was subsequently basically overruled by the Congress. Right. But Welch first says that, generally, we determine the retroactivity by whether the certain conduct, classes of person, or punishments are beyond the legislative power of Congress. And there are some exceptions to that. So you're saying this is one of those exceptions? Absolutely, Your Honor. Because Welch makes clear that the substantive rule exception is a test of function. And the question the Court asks is whether a certain class of persons or conduct is no longer punishable. Right. And that's exactly what Biford does, is it says that before Biford, we know that first-degree murder in Nevada required only proof of intent. And that's precisely what the Court acknowledges in Biford and Nika. But what's clear after Biford is that intent is no longer sufficient. Now the State must also prove your ---- Well, go ahead, yeah. Now the State must also prove deliberation, which requires a cool and dispassionate weighing process. And the Court holds that ---- I don't seriously question that argument that Biford was a substantive change. I think that's probably right. But the question is, Judge Rawlinson seems to be raising, and it's a concern, is I don't think the Supreme Court has ever said that State courts, when they're interpreting their own State statutes, and that's what this is, that the State supreme court has to apply a supreme court law on retroactivity. And, Your Honor, our position is that that is a logical conclusion that could be drawn from viewing Welch and Montgomery together. And in the procedural posture of an application to file a second or successive petition, Mr. Berry must only show that his position is plausible. But don't you think if the Supreme Court was making that ---- that impactful a ruling that it would have said so directly? Perhaps, Your Honor. But again, I'm ---- Sotomayor, you're saying we need to read two cases, draw inferences from those cases. And it's hard to believe that the Supreme Court would not have said that directly. Your Honor, in the procedural posture of an application to file a second or successive petition, this Court held in Henry v. Spearman that even if the rule we're espousing would require a non-frivolous extension of the rule that the Supreme Court announced, that is enough. But the Supreme Court didn't announce the rule that you're asking us to apply. That's ---- I think that's the difficulty I'm having with the argument, is I'm not sure that the Supreme Court announced the rule that you're asking us to apply. And, Your Honor, our position is that, at most, we're asking for a non-frivolous extension of the rule that the Supreme Court did announce in Welch and Montgomery. But isn't your position inconsistent with the very underpinnings of State habeas cases in Federal court, and that is that they, under 2254, they must have a constitutional claim. All right. Because they need a constitutional claim, doesn't that mean that the underlying case, the underlying State case which you're trying to retroactively apply must also be a constitutional claim? Your Honor, our position is that Montgomery itself establishes ---- No. My question is not that. My question is, is it inconsistent with the very underpinnings of the basics of 2254 being grounded in the Federal Constitution? No, Your Honor, because Montgomery is grounded in the Constitution. Montgomery holds that Teague itself is grounded in the Constitution, that the substantive rule exception itself is grounded in the Constitution. It seems like you're just putting on blinders and not looking at the underlying State case. Your Honor, I see that I'm almost out of time. If I could reserve the rest of my time. Yes. I would just point out, Your Honor, that what we're arguing for is at least has possible merit, and for that reason that we are entitled to receive a remand for the district court to consider in the first instance the difficult issues involved in the merits of this case. I'd like to reserve the remainder of what little I have left. Thank you. May it please the Court, Counsel, Jeffrey Conner from the Nevada Attorney General's Office on behalf of the respondents. I think the Court's questions this morning nail the legal issue that's before this Court this morning. This is a very narrow issue about whether the petitioner can make the showing necessary to satisfy 2244b-2 with respect to the filing of a second or successive petition. The Counsel's argument that the rule they're actually asking this Court to apply is the next logical step is inconsistent with what they actually need to show here. They need to show that there is a new rule that has been established by the Supreme Court of the United States that must be applied retroactively to cases on collateral review. Their suggestion that the rule they're wanting this Court to apply is the next logical step means that rule hasn't been established yet. And so even assuming their readings of these cases is correct, which I obviously don't agree that it is, that it's the next logical step doesn't mean they get to file a successive petition. The Supreme Court has to establish the rule first before they get to file a successive petition. Now, more importantly, though, I think the Court's questions go directly to the difficulty in this case is that the Supreme Court has not squarely addressed this issue because Welch is a Federal case and relies on Boosley v. United States. And in that case, the Supreme Court made clear that the reason or the rationale for why you would need to apply a narrowing construction of a substantive criminal statute retroactively in the Federal courts is recognized by the fact that the Federal courts don't have power to change the law. Only Congress can make conduct criminal. But the Supreme Court has recognized both in Rogers v. Tennessee and in Fiore v. White, Bunkley v. Florida, in those cases, that the State Supreme Court can substantively change State law. And as the Supreme Court established in Bunkley, when it remanded to the Florida Supreme Court for a determination of when the change in the L.B. case from Florida took place, which was a 1997 case, Mr. Bunkley's conviction became final in 1989, I believe. And so the question was there, was that although the Florida Supreme Court had identified L.B. as a change, it hadn't stated when the change occurred. The case goes back on remand to the Florida Supreme Court. The Florida Supreme Court says L.B. was the change. It occurred when we decided L.B. And at the time that Mr. Bunkley's case was decided, his conviction was based on a then correct statement of Florida law. That's the exact same scenario that we're dealing with here, except that in Nika v. State, the Nevada Supreme Court has made clear that Biford was the change, the change occurred when Biford was decided. And Mr. Berry's conviction was long final, more than a decade before Biford was decided. I think that, you know, very squarely presents the issue of the Court doesn't have. Roberts. Well, let me ask you, sir. You know, we're sort of acting as gatekeepers at this stage. Correct, Your Honor. And there are a number of cases that are still floating around with the Biford? Certainly not. Issued? There are a lot of them, yes. Right. Wouldn't it be — I mean, I recognize the difficulty with the arguments that are being advanced here. And on a merits panel, you know, on the district court, if it got to the merits of this, the district court might reject it. And if it came up here, we might reject it. But wouldn't it be prudent to, you know, in order to resolve all of these cases, to move this through the system? I don't think so, Your Honor. I think that's exactly what 2244-2 is designed to protect against. That unless it's very clear that there is an issue that the district court needs to address, that's what the gatekeeping function is for, is to prevent all of these cases that are not based on a new, clear rule that the Supreme Court has said this must be applied retroactively to cases on collateral review. That's the — that's the very function of that rule, and not to burden the Federal District Courts with successive petitions unless it's very clear that there is a rule that needs to be applied retroactively, and then — only then should the district court have to look at the actual merits of the claim. This Court has already held and recognized that Biford was a change in the law. That — that issue is undisputed in — you know, it's — Well, it's what the Nevada Supreme Court said. Well, this — this Court has also said — Yeah, I understand. It's recognized it, too. So, you know, the Nevada Supreme Court said it, and then subsequently — We said it was a clarification, and then they said, no, that's not right. It was a change in the law. Right. And then this Court came back and — and then said, well, the Nevada Supreme Court has said that this was a change in the law under Bunkley v. Florida that is a question of state law, whether something's a change or a clarification. Let me ask you this. So the underlying — the whole underlying argument with respect to Biford was that it changed the elements of the — what the state had to prove, right? And if — and when you lighten the burden — the state's burden, it violates — what's the — Sandstorm v. Montana. Yeah, it —  In re Winship, right. Constitutional — It violates, you know, the requirement — the constitutional requirement that the state prove all the elements of the crime beyond a reasonable doubt. Correct. And that — that — that point, Your Honor, is exactly what the — the Supreme Court was concerned about in Boozley that doesn't present a concern in the — under Bunkley v. Florida, where there's a change in state law. There's a substantive change. In Biford v. State, that was the — as the Nevada Supreme Court explained to Nika, that was the first time that the Nevada Supreme Court had split premeditation — premeditated and deliberate from each other and gave those terms distinct meaning. So it changed the relationship of the elements that make up the crime of first-degree murder in Nevada, and Nika's — Nika addresses that. It's a — it has a very thorough explanation that goes all the way back to the Nevada were understood to — to mean in Nevada up until the Nevada Supreme Court decided Biford. So it — it changed the meaning, not the elements. It changed the meaning — meaning of the element. But what those terms — They remained unchanged. It gave — it gave those terms new, distinct meaning. It did not change the elements. Correct. The Supreme Court, though, has expressed — I mean, what was the case, Fiori? Fiori v. White. Right. I mean, the Supreme Court has recognized that there may be instances where State courts have to apply Federal retroactivity law. That was the question that was subsequently addressed in — in Bunkley v. Florida. And why — if — if the distinction between a clarification and a change in the law means nothing, then the Supreme Court's remand in Bunkley was pointless. The — the reason the Supreme Court remanded in Bunkley was to allow the Florida court to identify when the change it recognized in L.B. occurred. If it — if — if Bunkley's conviction at the time it became final was based upon an incorrect statement of Florida law, that would create a due process problem. That problem doesn't exist in this case because the Nevada Supreme Court in NECA said that Biford changed the law, and that change occurred in 2000 when Biford was decided. Unless the Court has any further questions, I'll submit and ask that the Court deny the application. Very quickly, Your Honors. There can be no doubt that Montgomery announced a new rule of substitution — of constitutional law. Montgomery holds that Teague — that the substantive rule exception of Teague applies to the States as a matter of constitutional law. So we have established that there is a new rule of constitutional law. In the context of an application for a second or successive petition, Mr. Berry need only make a prima facie showing. And at this procedural posture, dismissal as to the ultimate lack of merit or other issues is not appropriate. There are a lot of complicated issues involved here in the merits of this case. We have at least made a plausible showing that our position is correct. And under this Court's holding in Henry v. Spearman, because we have made that plausible showing, we are entitled to a remand for the district court to consider the issues in the first instance, which this Court can then review on appeal from denial of that. The only other point I would make, Your Honors, is that Biford absolutely changed the elements of the first-degree murder statute in Nevada. This Court acknowledged as much in Babb, in Moore, and in Riley. So the State's argument that it didn't change the elements is — Sotomayor, how would the elements change, counsel? So the Court in Biford said that prior to Biford, the only thing the State had to prove was intent. Now, after Biford, the State has to also prove deliberation. And this Court acknowledged in Babb, Moore, and Riley that that was a substantive interpretation, a narrowing interpretation of the statute that did indeed change the elements that the State had. But weren't those elements always there? They just were — they were not distinguished in terms of jury instructions. But weren't — didn't the elements always exist in the statute? Your Honor, the State wasn't required to prove all the elements. So, no, the — Well, that's a different question as to whether the elements were changed or what the proof was required. The Court in Biford acknowledges that the element of deliberation was eliminated by the Nevada Supreme Court's decision in Green. Green eliminates the distinction and says all you have to prove is intent. And that is why Biford held that now we're no longer going to only require the State to prove intent. We are also now going to require the State to prove this separate element of deliberation. Thank you, Your Honors. Thank you. The matter is submitted.
judges: Murphy, Paez, Rawlinson